**SO ORDERED: March 13, 2007.**



_____
**Basil H. Lorch III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| AMERICAN COMMERCIAL LINES, LLC., et al. | ) | CASE NO. 03-90305 |
|     Debtor. | ) | |
| _____ | ) | |
| ALVIA E. HESTER and BRENDA HESTER, | ) | |
|     Plaintiffs, | ) | |
| v. | ) | ADV. NO. 06-59032 |
| | ) | |
| AMERICAN COMMERCIAL BARGE | ) | |
| LINE, LLC., | ) | |
|     Defendant. | ) | |

**ORDER**

    This matter comes before the Court on the **Defendant American Commercial Barge Line LLC's Motion to Dismiss for Failure to State a Claim** filed on June 30, 2006. The Defendant's **Brief in Support of American Commercial Barge Line LLC's Motion to Dismiss** was filed on October 23, 2006. The **Response Memorandum of Plaintiffs Opposing Dischargeability of Claim** filed on November 13, 2006, was followed by **American Commercial Barge Line LLC's Brief in Reply to Plaintiffs' Response Opposing Dischargeability of Claims** which was filed on

November 20. The Court conducted a hearing on the foregoing matter on January 29, 2007.

Background

The Debtor has moved to dismiss the Plaintiffs' Complaint alleging that the claim is barred and forever discharged by virtue of this Court's Confirmation Order dated December 30, 2004. The merits of that allegation, however, hinge upon a determination of when the Plaintiffs' claim accrued. Both parties have proposed several theories in an effort to resolve that question.

According to the Plaintiffs' Amended Complaint, Alvia Hester ["Hester"] began working as a tow boat pilot for American Commercial Barge Line ["ACBL"] in 1966 and continued working in that position for the next 35 years until retiring in 2002. Sometime in the late 1970s or the early 1980s, Hester began experiencing physical symptoms which ultimately led to a medical diagnosis of Polythycemia Rubra Vera ["PRV"] – a condition that Plaintiffs originally maintained is symptomatic of benzene-poisoning.[1] From that time forward, Hester received ongoing medical treatment from a series of different physicians and specialists, which included regular blood testing. Although Hester's PRV had been adequately "controlled" for over twenty years through medication and phlebotomy treatments, a June 2005 blood test revealed that Hester had developed leukemia.

On January 31, 2003, shortly after Hester retired from ACBL, the latter filed a voluntary petition to commence its chapter 11 case. The Plaintiffs admit that they became aware of ACBL's bankruptcy filing soon after the case was commenced. [Interrogatory Response, ¶ 8]. On September 19, 2003, the Court entered an *Order Granting Debtor's Motion for an Order Establishing a Bar Date, Approving the Proposed Form & Manner of Notice thereof, and Approving a Purge of the*

---

[1] At the hearing on January 29, 2007, counsel for Hester recanted the allegation that PRV is related to benzene poisoning. Instead, Hester would now assert only that the leukemia, which was diagnosed in June of 2005, is a result of benzene poisoning or chemical exposure.

*Master Mailing Matrix Following the Bar Date* [Docket No. 1063, hereinafter "Pre-Petition Bar Date Order"]. Pursuant to that Order, the Court established December 5, 2003 [the "Pre-Petition Claims Bar Date"] as the final deadline by which any person asserting a pre-petition claim against ACBL had to file a proof of claim. Notice of the Pre-Petition Bar Date Order was mailed to Plaintiffs' permanent address, wherein the Plaintiffs were advised of their need to file a proof of claim. They were further advised that they would "be forever barred, estopped and enjoined from asserting such claims" upon failure to file on or before the Pre-Petition Claims Bar Date.

On December 30, 2004, the Court entered a Order confirming the Debtors' Chapter 11 Plan, which discharged ACBL and its affiliated Debtors from any and all Claims existing as of the "Effective Date" of the Plan (ie., January 6, 2005) and enjoining the holders of any and all such Claims from "commencing or continuing in any manner any Claim, action or other proceeding of any kind with respect to any Claim . . . which they possessed or may possess prior to the Effective Date." Confirmation Order, ¶ 45.

As stated hereinabove, on June 29, 2005, Hester was diagnosed with a form of leukemia. He brought an action in the Circuit Court of Madison County, Illinois, on December 19, 2005, against ACBL and others, citing certain causes of action premised on state and/or maritime law, including causes of action for personal injury. On February 10, 2006, ACBL filed a *Notice of Removal* seeking removal to the Bankruptcy Court for the South District of Illinois, and on February 22, 2006, filed a *Motion for Transfer of Venue* seeking to bring the matter before this Court. On March 15, 2006, the Illinois Bankruptcy Court granted the Venue Motion, transferring the Removed Counts to this Court.

3

Standard of Review[2]

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Upon a motion for summary judgment, the Court will view the evidence in the light most favorable to the non-moving party and will draw all reasonable inferences in favor of the nonmoving party. *Markel v. Board of Regents of Wisconsin System*, 276 F.3d 906, 911 (7th Cir. 2002). The moving party bears the initial responsibility of demonstrating the absence of a general issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 319, 323 (1986). It may discharge its initial responsibility by simply showing that there is an absence of evidence to support the non-movant's case. *Id*. at 325.

Discussion

The Defendant alleges that Hester either knew that the alleged benzene exposure was the cause of his illness and did not assert it in a timely manner or, if he didn't know, then he did not reasonably investigate the cause of his problems. That was the same allegation made by the defendant in *Williams v. CSX Transportation, Inc.*, 2005 WL 1845173 (N.D.Ind.). But like Hester, despite diligent medical treatment, no one ever made a connection between Williams' injury and his job. In fact, in that case, the courts noted that in cases involving progressive conditions, it may be more difficult to pinpoint a time of "injury". "When the specific date of the injury cannot be determined because the injury resulted from continuous exposure to a harmful condition over a period of time, a plaintiff's cause of action accrues when the injury manifests itself." *Id. (citing Urie*

---

[2] Although this matter comes before the Court on the Defendant's Motion to Dismiss, because matters outside the pleadings have been tendered to the Court for consideration, the dismissal motion shall be treated as one for summary judgment as provided in Fed.R.Civ.P. 12(b).

*v. Thompson*, 337 U.S. 163 (1949)). "Therefore, the key is knowledge of the injury and, by extension, knowledge of the cause of that injury; it does not matter whether the plaintiff realizes that a legal wrong has occurred." *Id. (citing United States v. Kubrick*, 444 U.S. 111, 122-23 (1979); *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994)). According to the Seventh Circuit in *Fries v. Chicago & Northwestern Transportation Co.*, 909 F.2d 1092 (7th Cir. 1990), relied upon by ACBL, both components (injury and causation) require "an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause." *Id.* at 1095.

The *Williams* court, however, distinguished *Fries* based upon the fact that Williams, unlike Fries, did not wait years to see a doctor. Instead, he returned to the doctor several times, presenting different symptoms, seeking better relief and seeking answers. That court concluded that Williams acted with reasonable diligence and that, as such, the statute of limitations did not begin to run, under FELA, until he learned the essential facts of his injury. In our case, too, Hester was diagnosed with a condition which required ongoing medical care. Although he was diligent in obtaining medical care, his doctors have never identified the cause of his condition, possibly due to the very rare nature of his diagnosis.

At this stage of the proceedings, the Court has no medical testimony before it. The Court, in fact, has no evidence as to whether the PRV naturally and inevitably progressed into the leukemia, whether the PRV was misdiagnosed, or whether the leukemia was a second, though possibly related, disease. The Court is neither qualified nor inclined to interpret the medical records produced in evidence to date and, even more troubling, there is no evidence to substantiate if or when Hester was exposed to benzene.

The question that the Court cannot answer, therefore, is whether Hester had reason to believe his illness was caused by exposure to benzene while employed by ACBL.  Certainly, none of Hester's doctors ever told Hester that there was, or could be, a connection between the PRV and his job.  The only evidence in the record is Hester's ex-sister in-law who, in response to the question "When is it that Mr. Hester told you that he believes his leukemia was caused by chemicals?"  She testified that it was "Probably a couple of years ago, I think.  I got a call close to Christmastime, and I didn't know he was that sick."  But, of course, Hester wasn't diagnosed with leukemia until June 29, 2005, so her testimony seems to contradict known facts.

It is impossible for the Court to say whether it was reasonable for Hester to suspect that the cause of his illness was workplace exposure to benzene without knowing when, in fact, he was allegedly exposed.  Clearly, if the PRV developed before Hester had even been exposed to benzene, there would be no reason for him to associate his illness with his workplace environment.  Given the lack of evidence about the disease or general nature of the medical condition, or a time-line establishing when Hester allegedly came in contact with benzene in the course of his employment with ACBL, the Court is unable to say that no genuine issue of material fact remains in dispute.  In fact, these are among several facts which, at this early stage of the proceedings, seem unclear.

The Court, having reviewed the pleadings and exhibits thereto, and being otherwise fully and sufficiently advised, finds that there are genuine issues of material fact in dispute which preclude summary disposition of this matter.  The **Defendant American Commercial Barge Line LLC's Motion to Dismiss for Failure to State a Claim** is, accordingly, **DENIED.**

**IT IS SO ORDERED.**

###

Distribution to:

Robert Woods Phillips
Timothy F. Gianaris
Simmons Cooper LLC
707 Berkshire Blvd
E. Alton, IL 62024

David D. Farrell
1 US Bank Plaza
St. Louis, MO 36101

James M. Carr
Terry E. Hall
Baker & Daniels
300 N Meridian St Ste 2700
Indianapolis, IN 46204-1782

U.S. Trustee
101 W. Ohio St.. Ste. 1000
Indianapolis, IN 46204